# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4334 | DATE | December 5, 2000 |
| CASE TITLE | Chemetall GMBH v. Zr Energy, Inc., Joseph T. Fraval, and Arnold Berkovitz | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the defendant's motion to dismiss counts II-V of the plaintiff's Complaint is DENIED. [Docket #s: 58, 62].

(11) ☐ [For further detail see order on reverse side of the original minute order.]

No notices required, advised in open court.
No notices required.                                      number of notices: 2
Notices mailed by judge's staff.                          DEC 6 2000
X Notified counsel by telephone. — copies picked up       date docketed
Docketing to mail notices.
Mail AO 450 form.                                         docketing deputy initials
Copy to judge/magistrate judge.                           12/5/00

vg(lc)  courtroom deputy's initials

Date/time received in central Clerk's Office    pamf  mailing deputy initials

Document Number 75

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

| | |
|---|---|
| Chemetall GMBH | ) |
|     Plaintiff, | ) |
| | ) No. 99 C 4334  DEC 6 – 2000 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| Zr Energy, Inc., Joseph T. Fraval, and | ) |
|  Arnold Berkovitz, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before this court is defendants Zr Energy, Inc. ("Zr Energy"), Joseph T. Fraval("Fraval"), and Arnold Berkovitz ("Berkovitz") (collectively "defendants") motion to dismiss allegations of breach of contract, tortious interference, and unfair competition and a claim for punitive damages contained in plaintiff Chemetall GMBH's ("plaintiff" or "Chemetall") amended and supplemental complaint ("Complaint").[1]

### Statement of Facts

On January 7, 1994 Chemetall acquired certain assets from Morton International, Inc. ("Morton"), then the employer of defendant Fraval. Among the assets acquired by the asset purchase agreement between Chemetall and Morton ("Asset Purchase Agreement") were certain

---

[1] The plaintiff has also submitted Plaintiff's Cross-Motion Regarding Contract Interpretation. As this court does not recognize "cross-motions", the plaintiff's motion is stricken.

1

trade secrets, including Morton's proprietary process form the manufacture of a product called zirconium metal powder, a "specialty" chemical product, used primarily in pyrotechnic applications, including various triggering mechanisms for automobile airbags.

Morton, in turn, had acquired its proprietary zirconium powder process as the last in the chain of acquisitions through a series of companies that had developed the process over time. Fraval has been involved in zirconium metal powder production since July 19, 1978 when he executed a confidentiality agreement with Ventron Corporation. Fraval last signed a confidentiality agreement with Morton on November 20, 1989.

At some point thereafter, Fraval began working with Berkovitz to establish Zr Energy, a company that specializes in the zirconium powder process.

Plaintiff Chemetall brought an action against the defendants for misappropriation of trade secrets (count I), breach of contract (count II), tortious interference with contract (count III), unfair competition (count IV), and punitive damages (count V).

**Standard of Review**

Typically, a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test whether the defendant will prevail on the merits, but instead whether the defendant has properly stated a claim for which relief may be granted. Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir. 1995). The court must accept as true all of the defendant's well-pleaded factual allegations, as well as all reasonable inferences. Id. Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69,

78, 104 S. Ct. 2229, 2232 (1984)). Any ambiguities are construed in favor of the defendant Curtis v. Bembenek, 48 F.3d 281, 283 (7th Cir. 1995). However, the court need "not strain to find inferences favorable to the defendant which are not apparent on the face of the complaint." Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977).

In this case, the defendants rely on evidence from outside the pleadings in order to demonstrate the absence of contract between Chemetall and Fraval, and therefore an inability for Chemetall to bring a breach of contract claim against Fraval. "[I]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). In the plaintiff's response, they cite to evidence not limited to the pleadings. Consequently, for the purposes of determining the existence of a valid and enforceable contract between Chemetall and Fraval, this court will treat such review as one prompted by a motion for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter if law." Fed.R.Civ.P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co, 47 F.3d 928, 931 (7th Cir. 1995). The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg, 47 F.3d at 931. If

3

this burden is met by the movant, the non-movant must then set forth specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-movant. Cuddington v. Northern Ind. Public Serv. Co., 33 F.3d 813, 815 (7th Cir. 1994). However, Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion: "there must be evidence on which they jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

**Analysis**

Defendants seek to dismiss counts II-V of the plaintiff's Complaint. For the reasons stated below, the defendants motion is DENIED.

I. Breach of Contract

Under Illinois law, a plaintiff must prove each of the following elements of a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting injury to the plaintiff. Applied Industrial Materials v. Mallinckrodt, Inc., 102 F.Supp.2d 934, 937 (N.D. Ill. 2000). Illinois courts have recognized the assignability of confidentiality and non-compete agreements. Hexacomb Corporation v. GTW Enterprises, Inc., 875 F.Supp. 457 (N.D. Ill. 1993). A successor corporation in an asset purchase can enforce confidentiality agreements and covenants not to compete that an employee signed with its predecessor corporation. Id. at 464; A Fink & Sons v.

4

Goldberg, 139 A. 408 (Ct.Chan. 1927). Finally, although Illinois courts have not commented explicitly on interpreting multiple contracts, a fundamental principle of contract requires a court to consider intent of the entire contract and not simply a single term or provision. Thomas Hoist Co. v William J. Newman Co., 365 Ill. 160 (S.Ct. 1937); Bank of Homewood v Sjo 113 Ill. App. 3d 179 (1st Dist. 1983).

The defendants argue that second, third, and fifth causes of action are flawed because the plaintiff's allegations do not establish the existence of a valid and enforceable contract between Fraval and Chemetall. To support their motion, the defendants provide relevant sections of the November 20, 1989 Fraval Confidentiality Agreement and provision 9.31 of the Asset Purchase Agreement. The Fraval Confidentiality Agreement states in relevant part:

> (6) EMPLOYEE acknowledges that he/she occupies a position of trust and confidence with the COMPANY and will have access to and may develop Confidential Information of actual or potential value to or otherwise useful to the COMPANY; and agrees that during and after said employment, he/she will treat as confidential and will not, without express authorization from the COMPANY, disclose or use in whole or in party any Confidential Information that he/she may acquire while in said employment regarding or relating to the present or future business, sales financials, products, operations, processes, personnel, or business associates of the COMPANY, including any present or future subsidiary or affiliate thereof, or regarding improvements, inventions or know-how relating to such.
> ***
> (10) The above conditions shall apply to all work performed by EMPLOYEE for COMPANY including any of its past, present or future affiliates or subsidiaries, and shall be binding upon EMPLOYEE's assigns, executors, administrators and other legal representatives. This Agreement shall inure to the benefit of the successors and assigns.

Section 9.31 of the Asset Purchase Agreement provides:

> 9.13 Employees. No employee of Seller shall become an employee of Purchaser as a result of this transaction and Purchaser shall not

5

assume any liability or obligation with respect to any employee of Seller, including, but not limited to, any employment or consulting agreement entered into by Seller.

From the material above, the defendants conclude that "all Morton employment-related agreements - including the so-called Fraval Confidentiality Agreement - were expressly excluded from assignment to Chemetall." (Defendant's Memorandum of Law In Support of Defendant's Motion to Dismiss Counts II, III, IV and V of Plaintiff's Complaint ("Def.'s Mtn. to Dismiss"), pg. 5). In response, the plaintiff cites to the entire Assent Purchase Agreement and particularly provision 18 of the Asset Purchase Agreement, which states:

18. <u>Nondisclosure and Nonuse of Confidential Information</u>
(a) After the Closing, Seller shall keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others any of the subject Assets or information pertaining thereto and shall not disclose such information to anyone outside of the Purchaser . . .

(b) All of Seller's employees who have been active in the Business, at any time before the Closing date, shall be bound to a secrecy undertaking in accordance with paragraph 18(a).

Upon reviewing the entire Asset Purchase Agreement and the assignment clause in the Fraval Confidentiality Agreement, this court is convinced that no genuine issue of material facts exists as to whether Morton and Chemetall intended Chemetall to be the third-party beneficiary of the Fraval Confidentiality Agreement. Taking both the Fraval Confidentiality Agreement and the Asset Purchase Agreement together, this court finds that a valid and enforceable contract, the Fraval Confidentiality Agreement, exists between Chemetall and Fraval, and Chemetall may enforce its rights as provided by such contract. The defendants' motion to dismiss counts II and III of the plaintiff's claims is denied.

6

II. Unfair Competition Claim

The Illinois Trade Secrets Act ("ITSA") abolishes all common law theories of misuse of trade secrets and confidential information. Composite Marine Propellers, Inc., v. Van Der Woude, 962 F.2d 1263 (7th Cir. 1992); Thomas & Betts Corp. v. Panduit Corp., 108 F.Supp.2d 968 (N.D. Ill. 2000). Under Section 8 of the ITSA, non-contract causes of action are preempted to the extent that they are based on a misappropriation of trade secrets. Specifically, Section 8(a) states:

> Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.
> 765 ILCS 1065/8(a).

The ITSA's preemption provision is not without limits, however, as Section 8(b) provides that the ITSA does not affect or displace

> (1) contractual remedies, whether or not based upon misappropriation of a trade secret, ...;
> (2) other civil remedies that are not based upon misappropriation of a trade secret;
> (3) criminal remedies, whether or not based upon misappropriation of a trade secret; or
> (4) the definition of a trade secret contained in any other Act of this State.
> 765 ILCS 1065/8(b).

The ITSA, however, only displaces conflicting laws that provide civil remedies for *misappropriation of trade secrets*. The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 §2 provides:

> A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation he . . .
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

7

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he does not have.

Chemetall alleges in its Complaint that, in addition to misappropriating information, "ZR, through its agents in the marketplace, represented that its zirconium powder product was identical to that of Chemetall as to specifications and performance characteristics, and was manufactured using the same processes used by Chemetall." (Complaint, ¶ 31). The allegation that Zr falsely suggests that Zr Energy is using Chemetall's process with Chemetall's (or Morton's) knowledge and approval markedly differs from allegations of misuse or misappropriation of secret information. Consequently, the former allegation is not displaced by the ITSA. Count IV of the plaintiff's Complaint stands.

III. Punitive Damages Claim

The defendants argue that plaintiff's claim for punitive damages is based upon "some fiduciary duty owed to Plaintiff by virtue of the Fraval's various employment-related contracts with Morton," and therefore untenable. (Def.'s Mtn. to Dismiss, pg 13). This court finds, however, that the punitive damage claim is allowable by statute, 765 ILCS 1065/4(b). Consequently, the count VI as alleged stands.

## Conclusion

For the foregoing, the defendants motion to dismiss counts II-V of the plaintiff's Complaint is DENIED.

Enter: _____

David H. Coar

United States District Judge

Date: December 5, 2000