Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4334 | **DATE** | 1/7/2002 |
| **CASE TITLE** | Chemetall GMBH vs. ZR Energy, Inc., *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion for attorney's fees and non-taxable expenses [doc. # 141] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 8 2002 | |
| | Notified counsel by telephone. | | date docketed | 187 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/7/2002 | |
| | JJK courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | JJK mailing deputy initials | |



JAN - 8 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHEMETALL GMBH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 99 C 4334 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| ZR ENERGY, INC., JOSEPH T. ) | |
| FRAVAL, and ARNOLD BERKOVITZ, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chemetall GMBH ("Chemetall") brought this diversity action against ZR Energy, Inc ("ZR"), Joseph T. Fraval and Arnold Berkovitz under four theories of recovery: (1) trade secret misappropriation against all defendants, in violation of the Illinois Trade Secrets Act, 765 ILCS 1065; (2) breach of contract against Mr. Fraval; (3) tortious interference with contract against ZR and Mr. Berkovitz; and (4) unfair competition against all defendants. At the close of plaintiff's case, the Court entered judgment as a matter of law under Fed. R. Civ. P. 50(a) on the tortious interference and unfair competition claims, and submitted the trade secret and breach of contract claims to the jury. On March 9, 2001, a jury returned a verdict awarding compensatory damages against each of the defendants for trade secret misappropriation, assessing damages of $131,750.00 against ZR; $3,250.00 against Mr. Berkovitz; and $1,625.00 against Mr. Fraval. The jury also returned a verdict awarding compensatory damages against Mr. Fraval for breach of contract in the amount of $1,625.00.

The jury was instructed that under the Illinois Trade Secret Act, "[i]f you find that defendants' conduct was willful and malicious, then you can increase the damages to plaintiff up to

twice the amount" (Instruction No. 30). The jury verdict contained a finding that Mr. Berkovitz, but not the other defendants, acted "willfully or maliciously in misappropriating plaintiff's trade secret" (Verdict Form, Question No. 3). Based on that finding, the jury awarded punitive damages against Mr. Berkovitz in the amount of $3,250.00 (thereby doubling the compensatory damage award against him), and awarded no punitive damages against Mr. Fraval or ZR.

It is this punitive damage award against Mr. Berkovitz that provides the springboard for the motion presently before the Court: Chemetall's motion for an award of attorneys' fees in the amount of $412,604.75, and an award of non-taxable expenses in the amount of $9,612.93 [doc. # 141].[1] Chemetall argues that under Section 1065/5 of the Illinois Trade Secret Act, the jury's finding of willful and malicious misappropriation by Mr. Berkovitz warrants an award of attorneys' fees and costs not only against him, but also against ZR – either because Mr. Berkovitz's conduct should be imputed to ZR, or because of an indemnity agreement between ZR and Mr. Berkovitz (Pl.'s Mem. 10-12). Defendants argue that Section 1065/5 does not warrant an award of attorneys' fees and costs against Mr. Berkovitz (Defs.' Mem. 5-14); that in no event may any attorneys' fee or cost award be extended against ZR or Mr. Fraval (Defs.' Mem. 4-5); and that if any award of attorneys' fees or costs is made against Mr. Berkovitz, the amount should be drastically reduced – not because defendants challenge the reasonableness of the fees and costs sought (they do not), but rather for equitable reasons (Defs.' Mem. 14-16).

---

[1] In a Memorandum Opinion and Order dated September 14, 2001, in which the Court denied defendants' motions for judgment as a matter of law or, alternatively, for a new trial, the Court awarded Chemetall prejudgment and post-judgment interest, and $26,102.07 in taxable costs under Fed. R. Civ. P. 54(d). Chemetall's current motion seeks an award of costs that are not recoverable under Rule 54(d). In addition, Chemetall's current motion does not include an additional $40,000.00 in post-trial fees and costs that it also seeks to recover (*see* Pl.'s Reply Mem. at 12 n.3).

2

The threshold question presented by plaintiff's motion is whether, under Section 1065/5 of the Illinois Trade Secrets Act, the Court should exercise its discretion to enter an award of attorneys' fees to Chemetall. For the reasons that follow, the Court declines to exercise its discretion to award attorneys' fees to Chemetall, and thus denies the motion for fees and non-taxable expenses.

## I.

While many aspects of our legal system draw directly from British roots, that is not the case with respect to the allocation of attorneys' fees incurred in civil litigation. Under the "British rule," the question of attorneys' fees generally is handled under the principle that to the victor goes the spoils. Thus, under the British rule, the losing party (whether a plaintiff or defendant) generally must pay the reasonable attorneys' fees that the victor incurred. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). The "American rule," by contrast, generally requires each party to bear the burden of the attorneys' fees he or she incurs in litigating a case. *Alyeska Pipeline, id.*

This traditional American rule for the allocation of attorneys' fees in civil litigation may be varied, of course, by contract or by statute. *Esposito v. Piatrowski*, 223 F.2d 497, 500 (7th Cir. 2000). Here, Chemetall asserts no contractual basis for recovering fees. But Chemetall does cite a statutory basis: Section 1065/5 of the Illinois Trade Secrets Act, which provides that if "willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party." As the Seventh Circuit has held, this statutory authority vests a trial court with discretion to award attorneys' fees where there is a specific finding of "willful and malicious misappropriation." *Mangren Research & Development Corp. v. National Chem. Co.*, 87 F.3d 937, 946 (7th Cir. 1996).

3

However, neither the statutory language nor the cases decided under the Illinois Trade Secrets Act sheds light on what factors a court should consider to inform its decision whether to exercise discretion to award reasonable fees. Thus, we begin our analysis by examining what factors should be considered in deciding whether to award attorneys' fees. We then apply those factors in deciding Chemetall's motion for attorneys' fees.

## II.

Defendants argue that in exercising its discretion, the Court should determine whether attorneys' fees should be awarded in patent infringement cases under 35 U.S.C. § 285, which provides that "[t]he Court in exceptional cases may award reasonable attorneys' fees to the prevailing party." The federal circuit has construed this provision to require a district court to engage in a two-part inquiry in deciding to award fees. *Cybor Corp. v. Fas Techs, Inc.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998). *First*, the court must determine whether a case is "exceptional," a finding that normally would extend to cases of "bad faith litigation or those involving fraud or inequitable conduct by the patentee," *Cambridge Prds. Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 148, 1050-51 (Fed. Cir. 1992), or willful infringement. *See, e.g., Northlake Marketing & Supply, Inc. v. Glaverbel, S.A.*, 72 F.Supp.2d 893, 914 (N.D. Ill. 1999). *Second*, if the case is exceptional, the court must further determine whether an award of attorneys' fees is appropriate, *Cybor Corp.*, 138 F.3d at 1461; the fact that a case is "exceptional" does not automatically require an award of attorneys' fees. *Electro Scientific Indus. v. General Standing, Inc.*, 247 F.3d 1341, 1353 (Fed. Cir. 2001) (a finding of willfulness does not mandate an award of fees in a patent case). In determining whether to award fees in an exceptional case, the court may consider "the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factor whereby fee-shifting may serve

4

as an instrument of justice." *National Presto Industries, Inc. v. Westbend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996).

Plaintiff argues that these considerations should not be imported from the patent law context to the question of whether fees should be awarded under the Illinois Trade Secrets Act (Pl.'s Reply Mem. 6-7). However, the Court finds this argument unpersuasive for three reasons. *First*, the permissive fee-shifting provision of the Illinois Trade Secrets Act is similar to the fee-shifting provision contained in Section 4 of the Uniform Trade Secrets Act. *See* Historical and Statutory Note to Section 1065/5. And the commentary to Section 4 of the Uniform Trade Secrets Act specifically draws from the attorneys' fees provisions of the patent laws: "patent law is followed in allowing the judge to determine whether attorneys' fees should be awarded even if there is a jury, compare 35 U.S.C. § 285 (1976)." *See* UNI. TRADE SECRETS ACT SECTION 4, Comment 1 (1990). The fact that the framers of the fee-shifting provision of the Uniform Trade Secrets Act (which Illinois has adopted) considered the patent law analogy appropriate is strong evidence that the Court likewise should do so.[2]

*Second*, the factors that courts use to determine whether to award attorneys' fees in the patent law context are similar to factors used by Illinois courts in deciding attorneys' fees questions under other Illinois permissive fee-shifting state statutes. For example, the Illinois Consumer Fraud and Deceptive Business Practice Act ("the Illinois Fraud Act") provides – with some exceptions

---

[2]We note that the commentary to Section 4 of the Uniform Trade Secrets Act also states that the court "should take into consideration the extent to which a complainant will recover exemplary damages in determining whether additional attorneys' fees should be awarded." This statement does not provide much guidance standing alone, as it does not shed light on what use to make of that factor. Does a high punitive damages award militate against granting fees, since adding fees might "over punish" the defendant, or does it militate in favor of granting fees on the theory that a high punitive damages award reflects the severity of the conduct? Conversely, does a low punitive damages award militate in favor or against granting fees? In light of these unanswered questions, the Court considers the multi-factor standard borrowed from patent law to provide a more thorough framework for analysis.

irrelevant here – that a court "may award . . . reasonable attorneys' fees and costs to the prevailing party." 815 ILCS 505/10a(c). Case law decided under that provision has confirmed that the use of the word "may" means that an award of fees to the prevailing party is discretionary rather than mandatory, *see, e.g., Ekl v. Knect*, 585 N.E.2d 156, 165 (Ill. App. Ct. 2d Dist. 1991); *Tague v. Molitor Motor Co.*, 487 N.E.2d 436, 439 (Ill. App. Ct. 5th Dist. 1985), and has identified the following factors as relevant to determining whether to award attorneys' fees: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers where businesses were to resolve a significant legal question under the Act; and (5) the relative merits of the parties' positions. *Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.*, 617 N.E.2d 858, 863-64 (Ill. App. Ct. 2d Dist. 1993); *Haskell v. Blumthal*, 561 N.E.2d 1315, 1318 (Ill. App. Ct. 4th Dist. 1990). These factors substantially overlap with the factors used in determining discretionary fee awards in patent cases: both set of factors consider the degree of the losing parties' culpability; the Court sees no significant difference between the factor of "the closeness of the question" in the patent law formulation of the factors and the "relative merits of the parties' positions" in the Illinois formulation; and the patent law factor of whether fee shifting would "serve as an instrument of justice" is sufficiently broad to embrace the other considerations used under Illinois law.

*Third*, the Illinois courts adopted these considerations for use in fee questions under the Illinois Fraud Act by borrowing the analysis used to guide discretionary fee shifting in the ERISA context. *Haskell*, 561 N.E.2d at 1318 (citing *Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)). This suggests that Illinois courts would not hesitate to borrow the patent law analysis

6

in making discretionary fee awards into the context of the Illinois Trade Secrets Act – particularly since the Uniform Act, itself, makes reference to those very patent law concepts.

As the Court stated at the outset, neither the Illinois Trade Secrets Act nor the case law addresses the question of what factors should inform the Court's discretion in determining whether to award fees. Thus, the Court must endeavor to predict how the Illinois Supreme Court would resolve the question, and to apply that rule. *See Allen v. Transamerican Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997); *Green v. J.C. Penney Auto Insurance Co.*, 806 F.2d 759, 761 (7th Cir. 1986). For the reasons set forth above, the Court believes that if it addressed the question, the Illinois Supreme Court would endorse use by trial courts of the factor set forth in patent law for determining whether to make a discretionary award of attorneys' fees under the Illinois Trade Secrets Act. Thus, we turn to an analysis of plaintiff's request for fees and non-taxable costs utilizing those factors.

**A.**

We begin by considering the degree of culpability of the conduct of Mr. Berkovitz. As the Court has found (*see* 09/14/01 Mem. Op. and Order, at 14-19), there was sufficient evidence for the jury to make a finding that Mr. Berkovitz's conduct was willful and malicious. However, in assessing the *degree* of that wilfulness, the Court takes into consideration the undisputed testimony that Mr. Berkovitz asked Mr. Fraval on at least three occasions whether the information was confidential, and received assurances each time that it was not. In upholding the punitive damages award against Mr. Berkovitz, the Court reasoned that there was evidence from which the jury could (but was not required to) conclude that notwithstanding those disclaimers, Mr. Berkovitz "should have known" that he was acquiring trade secret information. Nonetheless, doing something that one "should have known" not to do is not quite the same thing as doing something that one has been

7

specifically told he cannot do. Had Mr. Berkovitz been told that the ZMP information that Mr. Fraval possessed was trade secret and he used it anyway, surely plaintiff would argue that that knowing conduct would heighten the degree of Mr. Berkovitz's culpability. By contrast, where Mr. Berkovitz acted contrary not to what he knew but what he should have known, that serves to lessen – although certainly not to eliminate – the degree of his culpability.

In *Virginia Panel Corp. v. MAC Panel Corp.*, 133 F.2d 860, 867 (Fed. Cir. 1997), the Federal Circuit affirmed the district court's denial of attorneys' fees to the prevailing plaintiff, noting among other things that the evidence showed that the infringement was "only recklessly indifferent as opposed to deliberate." The Court here considers Mr. Berkovitz's misappropriation to be more akin to recklessness than to deliberateness. Thus, Mr. Berkovitz's culpability weighs in favor of an award of fees, but not heavily.

**B.**

We next consider the closeness of the case or, in the language of the factors used by Illinois courts under the Illinois Fraud Act, "the relative merits of the parties' positions." The Court believes that this was a close case both on the question of liability and punitive damages.

With respect to liability, there was overwhelming evidence that defendants utilized the fifteen specific elements of plaintiff's ZMP manufacturing process in developing the ZR Energy process, as the ZR process tracked plaintiff's process in virtually every regard (*see* 09/14/01 Mem. Op. and Order at 12 and PX 135). However, the question was much closer on whether the plaintiff's information was a trade secret. On that point, the Court already has noted that there was "evidence cutting both ways" (*Id.* at 13). Moreover, in its post-trial ruling granting plaintiff an injunction, the Court specifically held that many of the elements in the plaintiff's ZMP manufacturing process that

8

plaintiff asserted were trade secrets, in fact, were not (04/06/01 Mem. Op. and Order at 5-8). In the Court's view, there was enough evidence that the jury could have come out either way on the question of whether plaintiff possessed trade secret information. And, as to punitive damages, the Court already has commented that the question of whether the jury reasonably could have assessed punitive damages against Mr. Berkovitz was "a close one" (09/14/01 Mem. Op. and Order at 15).

The fact that liability and punitive damages presented close questions is an important factor to be considered in determining whether to exercise discretion in favor of awarding attorneys' fees. *See Door-Master Corp. v. Yorktowne, Inc.*, 257 F.3d 1308, 1314 (Fed. Cir. 2001) (affirming denial of attorneys' fees to a prevailing plaintiff where the case presented a "close call" in certain important respects); *National Business Systems, Inc. v. A.N. International, Inc.*, 743 F.2d 1227, 1239 (7th Cir. 1984) (upholding denial of attorneys' fees where the "validity and infringement of the three patents was 'open to honest doubt,'"); *Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209, 214 (7th Cir. 1975) (upholding the denial of attorneys' fees in a patent case where "the issue of patentability was close and . . . the infringement issues were fairly debatable and litigated in good faith"). Given the closeness of the issues, the Court acts cautiously in "levying an attorneys' fees and costs award that would penalize a party for defending a lawsuit." *Century Record Corp. v. E.R. Busk Manufacturing Co., Inc.*, 913 F. Supp. 1256, 1293 (N.D. Iowa 1996). Here, the closeness of both the liability and punitive damages issues weighs against an award of fees.

## C.

We turn next to the consideration of defendants' litigation behavior. Here, no legitimate argument can be raised that defendants acted frivolously in defending the case. Defendants prevailed on two of the claims (unfair competition and tortious interference), and on the trade secret claim the

9

Court considers the evidence to have been close. Nor is there any argument that the defendants conducted their defense in such a way as to vexatiously or unnecessarily delay the ultimate disposition of the case or to increase its costs. While this is not a consideration that would counsel against a fee award if other factors supported one, nothing in defendants' litigation conduct would weigh in favor of an award of fees.

Plaintiff nonetheless argues that this factor weighs in its favor, because the "consequences of defendants' conduct to Chemetall" was that Chemetall "was required to pursue this action, at considerable expense, to preserve its trade secret" (Pl.'s Reply Mem. at 10). However, this argument proves too much, because it is always the case that the plaintiff will incur attorneys' fees and costs when prevailing in a lawsuit. Thus, under plaintiff's reading, this factor would always weigh in a prevailing party's favor – which would not make it much of a factor in guiding the Court's discretion on whether to award fees. At bottom, plaintiff's argument on this point boils down to the proposition that because Mr. Berkovitz was found to have acted willfully and maliciously he should have to bear the attorneys' fees and costs, which is an argument we reject because it would convert the permissive attorneys' fees provision under the Illinois Trade Secrets Act into a mandatory one. Accordingly, we find that this factor does not weigh in favor of an award of fees.

**D.**

In determining what other factors to consider in deciding whether an award of fees here would serve as "an instrument of justice," the Court looks to considerations that Illinois courts have used in the deciding attorneys' fees questions under permissive fee-shifting provision of the Illinois Fraud Act. We find that, on balance, those factors do not support an award of fees.

*First*, an award of fees here would not provide significant deterrent effect to others who might misappropriate trade secrets. We recognize that it always can be said that an award of attorneys' fees, which increases the amount that a defendant must pay to the plaintiff, might have some deterrent effect. But, because that can be said in every case, the Court looks to whether there is anything about the particular circumstances of this case that would provide some extra deterrent effect. The Court finds none. Indeed, in this case, the significant injunctive relief that was issued against ZR – which barred it from using inventory made using the infringing process, required it to revise its process, and has resulted in ZR being barred from manufacturing or selling ZMP for some nine months – sent an ample deterrent message that would not be significantly enhanced by awarding fees.

*Second*, this lawsuit did not present a novel legal question that the Court was required to resolve, or confer a benefit on others in the industry. Thus, it cannot be said that the plaintiff should be awarded fees because it conferred a general benefit on other similarly situated businesses, or advanced the law.

*Third*, the ability of Mr. Berkovitz to satisfy a $400,000.00 plus attorneys' fees and costs award is doubtful at best. Moreover, even were it appropriate to make ZR responsible for an attorneys' fees and cost award, that would not increase the ability of the defendants to pay: ZR is itself in a pending bankruptcy proceeding, and the evidence at trial shows that it has never made a

profit on ZMP business.[3] This factor, too, weighs against imposition of attorneys' fees and costs against Mr. Berkovitz.

## CONCLUSION

The Court finds that Mr. Berkovitz's degree of culpability was at the lower rather than the higher end of the culpability spectrum, and that this factor therefore only weakly augers in favor of an award of attorneys' fees and costs. In light of the closeness of the liability and punitive damages issues, the absence of any improper conduct in the defense of the litigation, the limited ability of the Mr. Berkovitz to bear the substantial attorneys' fees and costs award that is sought, the lack of any significant deterrence effect from an award of fees in this case, and the absence of any general benefit inferred by this litigation, the Court exercises its discretion to deny Chemetall attorneys' fees and costs in this case. Accordingly, Chemetall's motion [doc. # 141] is denied.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: January 7, 2002**

---

[3] While not necessary to this decision, the Court notes that even were it to award attorneys' fees and costs against Mr. Berkovitz, the Court would not extend that award to make ZR responsible for it. Although Chemetall argues that Mr. Berkovitz's conduct should be imputed to ZR, the jury specifically answered a question on the verdict form stating that it found that ZR had not engaged in willful and malicious misappropriation. Thus, the Court would not impose attorneys' fees and costs on ZR that would be contrary to the jury verdict. Nor would any indemnity agreement between ZR Energy and Mr. Berkovitz provide a basis, at this time, for the Court to impose responsibility for the attorneys' fees and costs on ZR. That would be a matter more suitable to a post-judgment collection proceeding – which, based on the Court's ruling, the Court does not believe will be necessary.